HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GARY KRANTZ, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>ALLSTATE PROPERTY AND<br>CASUALTY INSURANCE COMPANY,<br><br>                Defendant. | CASE NO. C12-5848 RBL<br><br>ORDER ON ALLSTATE'S MOTION<br>TO AMEND JUDGMENT<br><br>[DKT. #82] |

THIS MATTER is before the Court on Allstate's motion to allow set-off and to amend the judgment. [Dkt. #82]. This UIM case arose out of an automobile accident in which Plaintiff K.K. and others were injured. The accident was caused by Adam Pena, a drunk, underage driver. Dean Wenner provided the alcohol to Pena. After a lawsuit was commenced, the injured parties and the two tortfeasors (and their respective insurers) reached a global settlement, which exhausted the combined $350,000 limits of Pena's and Wenner's liability policies. K.K. received $65,000 from this combined fund; the actual check he received was apparently written by Wenner's insurer.

K.K.'s own insurer, Allstate, paid him an additional $10,000 for medical expenses under his PIP coverage. K.K. claimed that he had not been fully compensated, and initiated this action[1] against Allstate for UIM benefits. A jury determined that K.K. suffered a total of $81,708.32 in damages in the accident.

**A. Set off of prior settlement.**

Allstate now asks the Court to set-off from this total damage amount the $65,000 K.K. has already received. It argues that this is the result required under its policy and by the UIM statute, which requires "that a UIM carrier pay its insured's legally recoverable damages or UIM limits, whichever is less, *minus* "the sum of the limits of liability under *all* bodily injury or property damage liability bonds and insurance policies applicable to a covered person after an accident." *Allstate v. Dejbod*, 818 P.2d 608, 611 (Wash. 1991)(emphasis added); RCW48.22.030(1).

K.K. opposes any set-off. He emphasizes that Allstate admitted for purposes of the trial that Pena was the "sole proximate cause" of K.K.'s damages, and argues that his settlement proceeds came from *Wenner's* insurer, not Pena's. He claims that the $65,000 he received from Wenner's insurer cannot be deducted from the amount of the damages the jury found that Pena caused him, and that crediting Allstate for the payment a different insurer made on Wenner's behalf would be a windfall to Allstate.

K.K's approach is novel, but it is not correct; it is he, and not Allstate, who seeks a double recovery. The jury determined the *total amount of K.K's damages*—$81,708.32. It was not asked to determine any liability issues, and it did not do so. K.K already recovered $65,000 in the *global* settlement with both tortfeasors. Allstate's UIM coverage "floated" on top of the

---

[1] KK also asserted bad faith claims against Allstate, and those claims were bifurcated. The case will be re-opened so that that portion of the case may proceed.

tortfeasors' liability policies, and its purpose (under the policy and the UIM statute) is only to "make up the gap" between that insurance and the total amount of K.K.'s damages. *See Elovich v Nationwide Ins. Co.*, 707 P.2d 1319, 1323 (Wash. 1985) (UIM coverage floats on top of any recovery from other sources, up to the total value of the insured's injuries.) That gap is $16,708.32.

The only unusual feature of this case is that the jury was not told about Wenner's involvement (because they were also not told about Pena's intoxication). K.K. argues that Wenner's policy is therefore not an "applicable policy" for purposes of the Allstate UIM calculation. There is no authority for this proposition. The UIM litigation was about the amount of damages, not which tortfeasor caused them. As Allstate articulates in its Reply, nothing in *Dejbod* or *Bataan* changes this analysis; those cases are not analogous.

Allstate is entitled to deduct the amount of the settlement ($65,000) from the jury's total damage award under its policy and under the UIM statute.

**B. PIP Offset.**

Allstate also asks the Court to determine how much of its PIP payment should be reimbursed, after accounting for its pro rata share of the fees and costs incurred in creasting the common fund used to re-pay it.

As the result of the above analysis, Allstate is also correct on its analysis of the calculation of its PIP payment offset. Under *Hamm v State Farm Mut. Auto Ins.*, 88 P.3d 295 (Wash. 2004), Allstate is required to pay a pro rata share of the fees and costs incurred in creating the common fund ($81,708.32) from which its PIP payment will be re-paid. The parties agree that Allstate's PIP payment ($10,000) is to be divided by the total fund ($81,708.32) to obtain a percentage (12.24, rounded to 12%). They also agree that the fee amount is 1/3 of the total (.333 x $81,708.32 = $27,236.10).

1  Allstate is obligated to pay it pro rata share, 12%, of these fees, or $3,268.33. This
2  amount is correctly deducted from the $10,000 PIP payment for which Allstate seeks
3  reimbursement.

4  Allstate is also obligated to account for its pro rata share of the costs incurred in creating
5  the common fund. There is some confusion in the papers about the amount of costs the plaintiffs
6  are claiming, and about whether they seek credit for costs in both this case and the prior,
7  globally-settled case with the tortfeasors' liability insurers. The Court will use the full amount of
8  Plaintiff's most recent articulation of those costs, $7,485.11, for purposes of this calculation.
9  12% of $7,485.11 is $898.21. This amount too shall be deducted from Allstate's $10,000 PIP
10 reimbursement.

**C.  Amended Judgment Calculation.**

The calculation, then, is as follows:

The UIM "gap" between K.K's liability insurance recovery and his actual damages:

$81,708.32 - $65,000 = $16,708.32

Allstate's PIP offset against this amount, after accounting for its pro rata share of fees and costs:

$10,000 - [$3,268.33 + $898.21 = $4,166.54] = $5,833.46

Allstate's liability to Plaintiff K.K.:

$16,708.32 - $5,833.46 = **$10,874.86.**

The clerk shall enter an amended judgment against Allstate in this amount.

The parties apparently agree that Plaintiff Brenda Russell is entitled to **$1,085.19** for past economic damages. The amended judgment should reflect this amount as well.

>>

>

1   The impact of Allstate's Offer of Judgment [Dkt. #90 at Ex. A] on Plaintiff's entitlement

2   to the costs reflected in his pending motion for costs will be addressed in a separate order.

3   IT IS SO ORDERED.

4   Dated this 6th day of June, 2014.

_Ronald B. Leighton_

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE